| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------X<br><br>NICOMEDES FLORES, *a/k/a Pablo*,<br>and CRISOFORO CAMPOS, *on behalf<br>of themselves, FLSA Collective Plaintiffs,<br>and the Class*,<br><br>                                    Plaintiffs,<br><br>           v.<br><br>201 WEST 103 CORP., *d/b/a Buchetta*,<br>IANO CORP., *d/b/a Acqua*, 886<br>AMSTERDAM AVENUE CORP., *d/b/a Arco<br>Café*, 994 COLUMBUS AVENUE CORP.,<br>*d/b/a Isola*, 3143 BROADWAY CORP.,<br>*d/b/a Bettolona*, 1600 AMSTERDAM<br>AVENUE CORP., *d/b/a Coccola*, 412<br>AMSTERDAM CORP., *d/b/a Bettola*,<br>SEBASTIANO CAPPITTA, DANIELE FIORI,<br>and FRANCESCA FIORI,<br><br>                                 Defendants.<br>------------------------------------------------------X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: June 14, 2017<br><br><br>16 Civ. 2233 (KPF)<br><br>OPINION AND ORDER |

KATHERINE POLK FAILLA, District Judge:

       Plaintiffs Nicomedes Flores and Crisoforo Campos, on behalf of themselves and others similarly situated, brought this class and collective action against corporate Defendants 201 West 103 Corp., doing business as Buchetta; Iano Corp., doing business as Acqua; 886 Amsterdam Avenue Corp., doing business as Arco Café; 994 Columbus Avenue Corp., doing business as Isola; 3143 Broadway Corp., doing business as Bettolona; 1600 Amsterdam Avenue Corp., doing business as Coccola; 412 Amsterdam Corp., doing business as Bettola (together, the "Corporate Defendants"); and individual

Defendants Sebastiano Cappitta, Daniele Fiori, and Francesca Fiori (together, the "Individual Defendants") pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201-219 (the "FLSA"), and the New York Labor Law, Consol. Laws 1909, ch. 31 (the "NYLL").  Under the FLSA, Plaintiffs seek to recover from Defendants unpaid wages, unpaid overtime compensation, liquidated damages, and attorney's fees and costs.  Under the NYLL, Plaintiffs seek to recover unpaid wages, unpaid overtime compensation, unpaid "spread of hours" premiums, statutory penalties, liquidated damages, and attorney's fees and costs.

Corporate Defendants Iano Corp., doing business as Acqua; 886 Amsterdam Avenue Corp., doing business as Arco Café; 994 Columbus Avenue Corp., doing business as Isola; 3143 Broadway Corp., doing business as Bettolona; 1600 Amsterdam Avenue Corp., doing business as Coccola; and 412 Amsterdam Corp., doing business as Bettola (together, the "Moving Corporate Defendants"); and Individual Defendants Daniele Fiori and Francesca Fiori (together, the "Moving Individual Defendants," and together with the Moving Corporate Defendants, "the Moving Defendants") have moved to dismiss Plaintiffs' Amended Complaint (the "Complaint") under Federal Rule of Civil Procedure 12(b)6) and to strike Telesforo Reyes Galvez's declaration in support of Plaintiffs' opposition to Defendants' motion (the "Galvez Declaration").  For the reasons that follow, the Moving Defendants' motion to dismiss is granted in part and denied in part.  Defendants' motion to strike is denied as moot.

## BACKGROUND[1]

### A. Factual Background

#### 1. The Alleged Restaurant Enterprise

Plaintiffs allege that "Defendants operate a restaurant enterprise" comprised of seven restaurants by and through the Corporate Defendants, which restaurants are identified in the caption of this case: Buchetta, which formerly did business as Buca; Bettola; Acqua; Arco Café; Isola; Bettolona; and Coccola (together, the "Restaurants"). (Compl. ¶ 7). Specifically, Plaintiffs allege that

> [T]he Restaurants are engaged in related activities, share common ownership and have a common business purpose. The Restaurants are commonly owned by the Individual Defendant [Cappitta]. The Restaurants serve similar menu items and are all categorized as Italian and Brick Oven Pizza restaurants. The Restaurants are advertised and marketed jointly on the Internet[.] The "Bettola" and "Acqua" restaurants are also advertised jointly on the website www.sebastianoitaliano.com. In addition, supplies and employees are interchangeable between the Restaurants.

(*Id.* (citation omitted)).

Individual Defendant Cappitta is identified as "an equity interest holder and chief executive officer of all Corporate Defendants." (Compl. ¶ 9).

---

[1] This Opinion draws on facts from Plaintiffs' Amended Complaint ("Compl." (Dkt. #35)), taking all well-pleaded allegations as true as the Court must at this stage. *See, e.g., Peralta* v. *St. Luke's Roosevelt Hosp.*, No. 14 Civ. 2609 (KPF), 2015 WL 3947641, at *1 n.1 (S.D.N.Y. June 26, 2015). The Court has also reviewed the briefing submitted by the parties and will refer to it as follows: the Moving Defendants' Memorandum of Law in Support of Their Motion to Dismiss (Dkt. #42) will be referred to as "Def. Br.," Plaintiffs' Memorandum of Law in Opposition to the Moving Defendants' Partial Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. #45) as "Pl. Opp.," and the Moving Defendants' Reply Memorandum in Further Support of Their Motion to Dismiss (Dkt. #48) as "Def. Reply."

Individual Defendants Daniele and Francesca Fiori are identified as "senior executive officers" of Corporate Defendant 886 Amsterdam Avenue, doing business as Arco Café.  (*Id.* at ¶ 10).  The Individual Defendants exercised control over Plaintiffs and the putative Class members, insofar as they had and "exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of [their] employment." (*Id.* at ¶¶ 9, 10).  With regard to Cappitta, Plaintiffs allege that

> [i] employees could complain to [Cappitta] regarding any of the terms of their employment, and [he] would have the authority to effect any changes to the quality and terms of employees' employment.  [ii] [Cappitta] regularly visited "Buchetta" and directly reprimanded any employee who did not perform his duties correctly.  [iii] [Cappitta] ensured that employees effectively serve customers and that the business is operating efficiently and profitably.  [iv] [Cappitta] exercised functional control over the business and financial operations of all Corporate Defendants.

(*Id.* at ¶ 9).  With regard to Daniele and Francesca Fiori, Plaintiffs allege they "exercised functional control over the business and financial operations of" Corporate Defendant 886 Amsterdam Avenue, doing business as Arco Café. (*Id.* at ¶ 10).  Daniele Fiori was also a manager at Buchetta restaurant, where he directly supervised Plaintiffs.  (*Id.*).

### 2. Plaintiffs' Employment and the Claims Arising Therefrom

Plaintiff Flores was employed by Defendants as a delivery person for Buchetta restaurant at 201 West 103rd Street in New York City from on or about March 5, 2013, through March 15, 2016.  (Compl. ¶ 24).  Throughout

this time, he "was regularly required to transfer produce, ingredients and supplies among Defendants' other Upper West Side restaurants." (*Id.* at ¶ 25).

Flores worked for 42 hours per week and was required to work without a lunch break. (Compl. ¶ 26). He was paid $20 per workday, regardless of the number of hours that he worked each day, which amounted to an hourly wage below New York's "tip credit" minimum wage. (*Id.* at ¶ 27). His "tips averaged $160 per workweek, and including his daily fixed salary, at all times, he received a straight time hourly rate of approximately $6.67 per hour, which is below the Federal and State minimum wage." (*Id.*). What is more, Flores

> was required to spend half of all his working hours engaged in non-tipped activities, including transferring ingredients and supplies between Defendants' restaurant locations, cleaning the bathroom, taking orders and answering the telephone, preparing bags and boxes for take-out and delivery orders, receiving and stocking incoming deliveries for the restaurant, disposing the garbage[,] and folding menus.

(*Id.* at ¶ 36).

Plaintiff Campos was hired by Defendants as a dishwasher for Buchetta restaurant at 201 West 103rd Street in New York City in or around December 2012. (Compl. ¶ 28). In or around May 2013, he was promoted to work as a food preparer, which role he maintained through approximately March 5, 2016. (*Id.*). Throughout this time, he "was regularly required to transfer produce, ingredients and supplies among Defendants' other Upper West Side restaurants." (*Id.* at ¶ 29).

Before his promotion in May 2013, Campos worked 58 hours per week. (Compl. ¶ 30). For this work, he was paid $390 per week regardless of the number of hours that he worked each day, which amounted to a wage below the Federal and State minimum wage. (*Id.* at ¶ 31). After his promotion, through December 2015, Campos regularly worked weeks of either 63.5 or 75.5 hours. (*Id.* at ¶ 30). For this work, he was paid $500 for 6-day workweeks and $540 for 7-day workweeks. (*Id.* at ¶ 31). From January 2016 through the end of Campos' employment in March 2016, Campos was paid $540 for 6-day workweeks and $640 for 7-day workweeks. (*Id.*). At all times, these wages were below the New York statutory minimum wage. (*Id.*). Moreover, Campos was at all times required to work without a lunch break. (*Id.* at ¶ 30).

Both Flores and Campos "were paid entirely in cash and did not receive any wage statements from Defendants." (Compl. ¶ 32; *see also id.* at ¶ 43). Plaintiffs likewise did not

> receive any notice that Defendants were claiming a tip credit ... [or] notice informing them that the tip credit taken by Defendants may not exceed the value of tips that they actually received. Defendants further failed to keep track of daily tips earned and maintain records thereof and failed to provide proper wage statements informing Plaintiffs ... of the amount of tip credit taken for each payment period.

(*Id.* at ¶ 35; *see also id.* at ¶¶ 39, 44). Plaintiffs were not paid overtime compensation nor the spread-of-hours premium for workdays exceeding 10 hours in length. (*Id.* at ¶¶ 37-38, 41-42).

**B.     Procedural Background**

Flores brought this collective and class action on March 25, 2016. (Dkt. #1). On June 3, 2016, Defendants filed a letter motion for a conference to discuss their contemplated motion to dismiss Flores's pleading. (Dkt. #31). A conference was held on June 28, 2016. Pursuant to the Court's discussion with the parties at that conference, Flores and Campos filed the Complaint on July 25, 2016. (Dkt. #35). Campos previously had consented to sue under the FLSA on June 21, 2016. (Dkt. #33).

On August 8, 2016, Defendants filed a letter motion for a second conference to discuss their contemplated motion to dismiss. (Dkt. #37). In light of the Court's discussions with the parties at the June 28, 2016 conference, Defendants' motion for a conference was denied. (Dkt. #39). Instead, the Court set a briefing schedule for Defendants' motion. (*Id.*).

The Moving Defendants filed their motion to dismiss on September 12, 2016. (Dkt. #40-42). Plaintiffs filed their opposition to this motion on October 26, 2016. (Dkt. #45; *see also* Dkt. #46-47). The Moving Defendants filed their reply on November 9, 2016. (Dkt. #48).

The Galvez Declaration that is the subject of Defendants' motion to strike was filed months later, on May 12, 2017. (Dkt. #49). Defendants filed their letter motion to strike the Declaration on May 15, 2017. (Dkt. #50). Plaintiffs opposed the letter motion on May 18, 2017 (Dkt. #51), and Defendants filed a reply on May 19, 2017 (Dkt. #52).

## DISCUSSION

**A.     Applicable Law**

**1.     Federal Rule of Civil Procedure 12(b)(6)**

When considering a motion to dismiss under this rule, a court should "draw all reasonable inferences in [the plaintiffs'] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  In this regard, a complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.  *See, e.g.*, *Hart* v. *FCI Lender Servs., Inc.*, 797 F.3d 219, 221 (2d Cir. 2015) (citing Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.  A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")).

"While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to '[nudge a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam) (quoting *Twombly*, 550 U.S. at 570).  "Where a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### 2. Employer Status Under the FLSA

The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'" *Nationwide Mut. Ins. Co.* v. *Darden*, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)).  That is because "broad coverage [under the FLSA] is essential to accomplish the [statute's] goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found.* v. *Sec'y of Labor*, 471 U.S. 290, 296 (1985).

"Unfortunately, however, the statute's definition of 'employer' relies on the very word it seeks to define[.]" *Irizarry* v. *Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013).  "Employer" is defined to "include[] any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  "The statute nowhere defines 'employer' in the first instance." *Irizarry*, 722 F.3d at 103.  "Accordingly, the [Supreme] Court has instructed that the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than

9

technical concepts." *Id.* at 104 (internal quotation marks omitted) (quoting *Barfield* v. *N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg* v. *Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961))). "The 'economic reality' test applies equally to whether workers are employees and to whether managers or owners are employers." *Id.*

There is no single economic-reality test consisting of uniform factors. Rather, "economic realities are assessed by reference to 'the particular situation' with some factors more important than others depending on the FLSA question at issue and the context in which it arises." *Brown* v. *N.Y.C. Dep't of Educ.*, 755 F.3d 154, 167 (2d Cir. 2014). Indeed, the Second Circuit has made clear "that the various factors [it has] relied upon ... [i] to examine the degree of formal control exercised over a worker, [ii] to distinguish between independent contractors and employees; and [iii] to assess whether an entity that lacked formal control nevertheless exercised functional control over a worker, state no rigid rule for the identification of an FLSA employer." *Barfield*, 537 F.3d at 143 (citations omitted) (citing *Zheng* v. *Liberty Apparel Co. Inc.*, 355 F.3d 61, 71 (2d Cir. 2003) (functional control); *Brock* v. *Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988) (independent contractors and employees); *Carter* v. *Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (formal control)). To the contrary, the Circuit has reiterated that these factors are nonexclusive and overlapping "to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Barfield*, 537 F.3d at 143.

With this background in mind, the Court considers factors that courts in this Circuit have analyzed to identify an "employer" for purposes of the FLSA.[2]

### a. Formal Control

The Second Circuit first announced the "traditional four-factor test" of formal control in *Carter* v. *Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984). *See Barfield*, 537 F.3d at 144; *see also Zheng*, 355 F.3d at 72 (affirming that "formal control [is] measured by the *Carter* factors"). The four *Carter* factors are "whether the alleged employer [i] had the power to hire and fire the employees, [ii] supervised and controlled employee work schedules or conditions of employment, [iii] determined the rate and method of payment, and [iv] maintained employment records." 735 F.2d at 12. Satisfying these factors "can be *sufficient* to establish employer status," but is not "*necessary* to establish an employment relationship." *Zheng*, 355 F.3d at 71.

### b. Functional Control

To that end, the Second Circuit has recognized that additional factors "when they weigh in plaintiffs' favor, [can] indicate that an entity has functional control over workers even in the absence of the formal control measured by the *Carter* factors." *Zheng*, 355 F.3d at 72. The factors the Circuit found "pertinent" to determining whether a garment manufacturer exercised

---

[2] "The NYLL uses the same definition of an employer" as the FLSA. *Bravo* v. *Established Burger One LLC*, No. 12 Civ. 9044 (CM), 2013 WL 5549495, at *5 (S.D.N.Y. Oct. 8, 2013); *see also Lopez* v. *Pio Pio NYC, Inc.*, No. 13 Civ. 4490 (HB), 2014 WL 1979930, at *2 (S.D.N.Y. May 15, 2014). Accordingly, this Court's analysis of the Moving Defendants' employer status under the FLSA is equally applicable to Plaintiffs' NYLL claims.

11

"functional control" over subcontracted workers in *Zheng*, "listed in no particular order," were

> [i] whether [the manufacturer]'s premises and equipment were used for the plaintiffs' work; [ii] whether the Contractor Corporations had a business that could or did shift as a unit from one putative joint employer to another; [iii] the extent to which plaintiffs performed a discrete line-job that was integral to [the manufacturer]'s process of production; [iv] whether responsibility under the contracts could pass from one subcontractor to another without material changes; [v] the degree to which the [manufacturer] or [its] agents supervised plaintiffs' work; and [vi] whether plaintiffs worked exclusively or predominantly for [the manufacturer].

*Id.*; *see also, e.g.*, *Irizarry*, 722 F.3d at 105 n.4.

### c. Single-Integrated-Enterprise Liability

"A 'single employer' situation exists where two nominally separate entities are actually part of a single integrated enterprise." *Perez* v. *Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091 (ER), 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013) (quoting *Clinton's Ditch Coop. Co.* v. *NLRB*, 778 F.2d 132, 137 (2d Cir. 1985)). As courts have observed:

> In such circumstances, of which examples may be parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management, … an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger single-employer entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer.

*Perez*, 2013 WL 749497, at *7 (internal quotation mark omitted) (quoting *Arculeo* v. *On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005)).

Though "the Second Circuit does not appear to have 'expressly applied the integrated enterprise test in the FLSA context,'" courts in the Circuit have found "sufficient support for its application" in the breadth of the FLSA's definition of an employer and the Second Circuit's interpretation thereof. *Coley* v. *Vannguard Urban Improvement Ass'n, Inc.*, No. 12 Civ. 5565 (PKC) (RER), 2016 WL 4179942, at *5 (E.D.N.Y. Aug. 5, 2016) (quoting *Teri* v. *Spinelli*, 980 F. Supp. 2d 366, 372 n.12 (E.D.N.Y. 2013)) (citing *United States* v. *Stanley*, 416 F.2d 317, 318 (2d Cir. 1969) (per curiam)); *see also Lopez* v. *Pio Pio NYC, Inc.*, No. 13 Civ. 4490 (HB), 2014 WL 1979930, at *3 (S.D.N.Y. May 15, 2014) ("[T]he 'shared policy concerns underlying the ... doctrine and the FLSA' urge the theory's application to FLSA claims." (quoting *Chen* v. *TYT E. Corp.*, No. 10 Civ. 5288 (PAC), 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012))). *But see Hart* v. *Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 n.16 (S.D.N.Y. 2013) (declining to apply the integrated enterprise test because it was not commonly used and would lead to the same result as the economic realities test).

"In assessing whether 'multiple defendants constitute a single employer, courts consider the following factors: [i] interrelation of operations; [ii] centralized control of labor relations; [iii] common management; and [iv] common ownership or financial control.'" *Li* v. *Ichiro Sushi, Inc.*, No. 14 Civ. 10242 (AJN), 2016 WL 1271068, at *6 (S.D.N.Y. Mar. 29, 2016) (quoting *Perez*, 2013 WL 749497, at *7); *see also, e.g., Juarez* v. *449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014). Significantly, however, because "the question of 'whether a *particular* defendant can be considered a plaintiff's employer is a

fact-specific inquiry[,]' ... courts have held that 'on a motion to dismiss, the relevant inquiry is whether a defendant has been put on notice of the theory of employer liability.'" *Li*, 2016 WL 1271068, at *6 (quoting *Perez*, 2013 WL 749497, at *7).

**B.   Analysis**

    **1.   The Moving Defendants' Motion to Dismiss Plaintiffs' Claims Against 1600 Amsterdam Avenue Corp. and Francesca Fiori Is Granted**

Plaintiffs agree to dismiss their claims as to Moving Corporate Defendant 1600 Amsterdam Avenue Corp., doing business as Coccola, and Moving Individual Defendant Francesca Fiori. (Pl. Br. 2). Because Plaintiffs do not dispute the Moving Defendants' contention that Plaintiffs have failed to state a claim with regard to these Defendants, and indeed consent to the dismissal of these claims, the Moving Defendants' motion to dismiss Plaintiffs' claims against 1600 Amsterdam Avenue Corp., doing business as Coccola, and Francesca Fiori is granted.

    **2.   The Moving Defendants' Motion to Dismiss Plaintiffs' Claims Against the Remaining Moving Corporate Defendants Is Denied**

With regard to Moving Defendants Iano Corp., doing business as Acqua; 886 Amsterdam Avenue Corp., doing business as Arco Café; 994 Columbus Avenue Corp., doing business as Isola; 3143 Broadway Corp., doing business as Bettolona; and 412 Amsterdam Corp., doing business as Bettola, Plaintiffs have not alleged that these entities had any direct relationship with Plaintiffs. Flores alleges only that he was "regularly required to transfer produce, ingredients and supplies among Defendants' other Upper West Side

restaurants, including 'Bettola,' 'Acqua,' 'Arco Café,' 'Isola,' and 'Bettolona.'" (Compl. ¶ 25; *see also id.* at ¶ 36).  Campos alleges in turn that he too was "regularly required to transfer produce, ingredients and supplies among Defendants' other Upper West Side restaurants, including 'Acqua,' and 'Isola.'" (*Id.* at ¶ 29).  While both Plaintiffs allege that "employees are interchangeable between the Restaurants" (*id.* at ¶ 7), neither Plaintiff claims to have worked for any Corporate Defendant other than 201 West 103 Corp, doing business as Buchetta.

Plainly, these allegations alone are not enough to establish that Moving Defendants Iano Corp., doing business as Acqua; 886 Amsterdam Avenue Corp., doing business as Arco Café; 994 Columbus Avenue Corp., doing business as Isola; 3143 Broadway Corp., doing business as Bettolona; and 412 Amsterdam Corp., doing business as Bettola, had formal or functional control over Plaintiffs.  And Plaintiffs do not appear to dispute this.  Instead, Plaintiffs place all of their eggs in the single-integrated-enterprise basket:  Plaintiffs allege that all of the Corporate Defendants comprised a "single integrated enterprise" on the basis of their common ownership by Cappitta and their common business purpose, specifically, their sale in the Restaurants of "similar menu items" and the Restaurants' common identities as "Italian and Brick Oven Pizza restaurants." (Compl. ¶ 7).  Plaintiffs further allege that the Restaurants are "advertised and marketed jointly" because (i) they were described in a news article as part of Cappitta's "Upper West Side empire" of

"seven restaurants" and (ii) "[t]he 'Bettola' and 'Acqua' restaurants are … advertised jointly on the website www.sebastianoitaliano.com." (*Id.*).

This Court finds, as have others in this District, that accepting (i) the truth of Plaintiffs' allegations, as it must at this stage, and (ii) the existence of single-integrated-enterprise liability under FLSA, Plaintiffs have plausibly alleged the existence of a single integrated enterprise in this case. "In the FLSA context, facts that go to the existence of a single, integrated enterprise include common decor, name, menu and marketing; the use of the same employees at multiple locations; the transfer of items between restaurants; use of the same central payroll office, common storage space and leases; and the distribution of common employee guidelines and procedures across different businesses." *Khereed* v. *W. 12th St. Rest. Grp. LLC*, No. 15 Civ. 1363 (PKC), 2016 WL 590233, at *4 (S.D.N.Y. Feb. 11, 2016) (collecting cases). Here, Plaintiffs have alleged facts that the Restaurants had similar names, a common theme, and similar menus. Plaintiffs alleged that they personally transferred items between the Restaurants, and that the Restaurants were commonly owned and operated by Cappitta. Two of the Restaurants shared a website.

Certainly, Plaintiffs could have been more specific in their allegations, and the Court wishes that they had been. But "although Plaintiffs could have included more detail in their amended complaint, they have put forward more than 'mere boilerplate allegations'" of the existence of a joint integrated enterprise. *Li*, 2016 WL 1271068, at *6 (quoting *Bravo*, 2013 WL 5549495, at *7); *see also Juarez*, 29 F. Supp. 3d at 367 ("Stripping away its various

16

conclusory (or arguably conclusory) statements, the Amended Complaint still contains well-pleaded factual allegations [of a single integrated enterprise.]").

### 3. The Moving Defendants' Motion to Dismiss Plaintiffs' Claims Against Daniele Fiori Is Denied

With regard to Daniele Fiori, the Court finds at this stage that Plaintiffs have plausibly pleaded that Fiori was their employer. Specifically, Plaintiffs have alleged that Fiori had and "exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of [Plaintiffs'] employment." (Compl. ¶ 10). While the Court might deem this alone little more than a conclusory allegation tailored to the tests of employer control described above, the Court notes that Plaintiffs have also pleaded that Fiori was "a manager at 'Buchetta' and directly supervised Plaintiffs" in that capacity. (*Id.*).

Drawing all inferences in Plaintiffs' favor as it must at this stage, the Court finds that Plaintiffs have plausibly pleaded that Fiori had formal control over them, such that he was Plaintiffs' employer for purposes of the FLSA.

### 4. Defendants' Motion to Strike Is Denied

The Court is aware of the limits on its ability to consider materials outside the pleadings when adjudicating a motion brought under Rule 12(b)(6). *See Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016). Generally courts may "not look beyond 'facts stated on the face of the complaint, ... documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken.'" *Id.* at 559 (omissions in original) (quoting *Concord Assocs., L.P.* v. *Entm't Props. Tr.*, 817 F.3d 46, 51 n.2

(2d Cir. 2016)). Plaintiffs here urge the Court to consider the support leant to Plaintiffs' opposition by the Galvez Declaration, as well as by each Plaintiff's own Declaration (Dkt. #46, 47), but the Court declines to do so. The Court was able to resolve Defendants' motion without considering the Galvez Declaration or either of Plaintiffs' Declarations, which the Court agrees with Defendants are outside the Court's purview at this stage. Accordingly, Defendants' motion to strike the Galvez Declaration is denied as moot.

## CONCLUSION

For the reasons outlined above, the Moving Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendants' motion to strike is DENIED as moot. The Clerk of Court is directed to terminate the motions pending at Docket Entries #40 and #50. The remaining parties are directed to provide the Court with a joint status letter and proposed case management plan on or before **June 28, 2017**, so the Court may determine how this case will proceed.

SO ORDERED.

Dated:   June 14, 2017
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge